BALES, Justice,
dissenting.
¶ 22 I respectfully dissent. APSA imposes civil liability on “any person or enterprise” that is employed or assumes a legal duty, or is appointed by a court, to provide care and that causes or permits a vulnerable adult to *329 be endangered or injured by neglect, abuse, or exploitation. AR.S. § 46-455(B). “Enterprise” includes any “legal entity,” id. § 46-455(Q), and the state is a legal entity under A'izona law. Given APSA’s language and remedial purpose, the Court should hold that the state will be liable for damages if it endangers or injures a vulnerable adult in violation of § 46-455(B).
¶ 23 As the majority recognizes, Op. ¶ 8, we should interpret statutes to give effect to the legislatures intent. Before APSA’s enactment, care providers that abused vulnerable adults faced common law tort liability and possibly criminal penalties for offenses such as assault. Concluding that these sanctions were insufficient, the legislature adopted APSA in 1988 but originally provided only criminal penalties for any “person” who violated the statute. 1988 Ariz. Sess. Laws, ch. 85, § 2. The very next year, the legislature amended APSA to also recognize a civil cause of action against “any person or enterprise.” The statute provides:
A vulnerable adult whose life or health is being or has been endangered or injured by neglect, abuse or exploitation may file an action in superior court against any person or enterprise that has been employed to provide care, that has assumed a legal duty to provide care or that has been appointed by a court to provide care to such vulnerable adult for having caused or permitted such conduct.
AR.S. § 4G-i55(B) (emphasis added).
¶ 24 Underscoring that civil liability under APSA extends broadly, the legislature defined enterprise to mean “any corporation, partnership, association, labor union or other legal entity, or any group of persons associated in fact although not a legal entity, which is involved with providing care to an incapacitated or vulnerable adult.” AR.S. § 46-455(Q) (emphasis added). APSA’s definition of “enterprise” echoes the definition used in the federal racketeering statutes, a definition that federal courts had broadly construed to include public entities. United States v. Long, 651 F.2d 239, 241 (4th Cir.1981); United States v. Angelilli, 660 F.2d 23, 33 (2d Cir.1981).
¶ 25 There is no doubt that the state is a “legal entity” under Arizona law. See State ex rel. Smith v. Bohannan, 101 Ariz. 520, 523, 421 P.2d 877, 880 (1966) (describing the state as a legal entity). This fact, combined with APSA’s broad language, indicates that the state can be liable under the statute. Athough conceding that the state generally is a legal entity, the majority concludes that the state is not a legal entity for purposes of APSA Op. ¶ 11-12.
¶ 26 Observing that statutory words cannot be read in isolation, Op. ¶ 12, the majority first contends that the phrase “any corporation, partnership, association, labor union or other legal entity” suggests that the term “legal entity relates to entities like labor unions.” Id. But this reasoning does not construe “legal entity” in light of APSA’s surrounding language — which, after all, provides that “any enterprise” may be liable and that “enterprise” encompasses not only any legal entity but also any other group of people associated in fact. AR.S. § 46-455(Q). Instead, the majority seeks to narrow the scope of “legal entity” by relying on the absence of a serial comma after “labor union.”
¶ 27 The absence of a comma sheds no light on the meaning of “legal entity” under APSA The majority evidently believes that because a serial comma distinguishes items in a series, see e.g. William Strunk, Jr. & E.B. White, The Elements of Style 2 (4th ed. 1999) (“In a series of three or more terms with a single conjunction, use a comma after each term except the last.”), the omission of a comma allows the final entries (here “labor union” and “other legal entity”) to be read as one category. Cf. Bryan A. Garner, The Oxford Dictionary of American Usage and Style 70 (2000) (advising that the omission of a serial comma allows the final entries to be “joined” or “read as one category”). Whatever force this argument may have in other contexts, it is singularly unconvincing with respect to APSA’s definition of “enterprise.”
¶28 Athough the use of a serial comma may desirably avoid ambiguity, grammarians disagree whether the penultimate entry in a series should be followed by a comma. See Bryan A. Garner, Gamer’s Modern Ameri *330 can Usage 654 (2003). Cf. Bill Walsh, Lapsing into a Comma 81 (2000) (noting newspaper convention of omitting serial commas). More importantly, the style manual for Arizona’s legislature expressly advises that a comma should not be inserted before the conjunction “or” at the end of a series of items. See The Arizona Legislative Bill Drafting Manual 2011-12 at 83; The Arizona Legislative Bill Drafting Manual 2009 at 81. Discounting the legislature’s own style conventions, the majority asserts that the omission of a serial comma here “is substantive and not merely stylistic.” Op. ¶ 12 n. 2. (Contrary to the majority’s suggestion, id., the comma preceding “or any group of persons associated in fact although not a legal entity” is not a serial comma; it does not come before the last item in the series of legal entities.)
¶ 29 The history of the amendments to APSA confirms that the omission of a comma before “or other legal entity” has no substantive import. From 1989 until 2009, the definition of “enterprise” included a comma after “labor union” and before “or other legal entity.” In 2009, the legislature amended APSA, primarily to expand civil liability for the financial exploitation of vulnerable adults or theft, but also to make certain technical and conforming changes. Arizona State Senate, Fact Sheet for H.B. 2344, 49th Leg., 1st Reg. Sess. (June 24, 2009). For example, the legislature defined “vulnerable adults” to include certain “incapacitated persons” and changed previous references to “incapacitated or vulnerable adults” to instead say “vulnerable adults.” See 2009 Ariz. Sess. Laws 119, § 4 (1st Reg.Sess.). Apart from this change, the 2009 amendments changed the definition of “enterprise” in two ways: substituting a “that” for a “which” and omitting the comma after “labor union.” See id. § 8.
¶ 30 The change in the comma was obviously non-substantive. To conclude otherwise implausibly suggests that when the legislature expressly expanded civil liability under APSA, it also silently narrowed the field of potential “other legal entity” defendants to only those somehow related to labor unions. Cf. Op. ¶ 12 n.2 (recognizing that 2009 amendments deleted comma). We should not infer that the legislature “hide[s] elephants in mouseholes,” Whitman v. American Trucking Ass’ns, 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001), much less in the deletion of a comma.
¶ 31 In determining that the state is not a legal entity for purposes of APSA, the majority also resorts to ejusdem generis, reasoning that “because the phrase ‘other legal entity' follows specifically enumerated (and generally private) business entities, the phrase is most reasonably interpreted as applying to such entities rather than to governmental bodies.” Op. ¶ 13. This argument fails, however, because the entities specifically enumerated in the statute are not limited to business entities, whether private or public, but include, among other things, any corporation or association. See AR.S. § 46-455(Q). Under Arizona law, the term “corporation” may embrace both private and public entities. See Sumid v. City of Prescott, 27 Ariz. 111, 114-16, 230 P. 1103, 1105 (1924) (holding that “corporation” under Employers’ Liability Law includes municipal corporations). Indeed, under long-settled case law, State v. Stone, 104 Ariz. 339, 452 P.2d 513 (1969), the state may be liable in wrongful death actions, even though the underlying statute imposes liability only on “persons” and “corporations.” See A.R.S. § 12-611 (providing that “the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured”).
¶ 32 Construing “legal entity” under APSA to include public entities like the state is also consistent with the statutory provisions imposing liability broadly on “any person or enterprise” and defining “enterprise” to include any group of persons associated in fact, whether or not a legal entity. This interpretation also comports with federal case law concluding that public entities may be “enterprises” under the federal racketeering statute, which defines “enterprise” in language similar to A.R.S. § 46-455(Q). See, e.g., Long, 651 F.2d at 241 (holding in accord with majority of the federal courts that “RICO should be construed to include public entities as enterprises”).
*331 ¶ 33 In short, neither ejusdem generis nor the principle that statutes should be construed in light of their surrounding words suggests that APSA’s reference to legal entities excludes the state.
¶ 34 The majority also observes that the legislature has sometimes specifically listed the state or other public entities in statutes that refer to legal entities more generally. Op. ¶ 14. This fact, however, does not imply that the state is only a legal entity if it is expressly so identified by statute. See Bo-hannan, 101 Ariz. at 523, 421 P.2d at 880 (noting, in a contractual dispute, that the state is a distinct legal entity with the power to sue and be sued). Instead, the statutory language cited by the majority suggests the legislature recognizes that public entities are included in but do not exhaust the class of legal entities. See, e.g., A.R.S. § 12-715(A)-(B) (excluding from liability “[a] person, a public entity or any other legal entity” that donates fire equipment); AR.S. § 27-129(F) (allowing donations from “any person, public entity or other legal entity”); A.R.S. § 45-251(3) (defining “person” for purposes of water adjudication to include “the state ... or any other legal entity, public or private”).
¶ 35 The majority also observes that “APSA’s enforcement scheme suggests the legislature did not intend to include the state as a potential defendant.” Op. ¶ 16. I disagree. There is nothing anomalous about subjecting the state to liability under a statutory scheme the state also enforces. See, e.g., Arizona Disabilities Act, AR.S. § 41-1492.01; AR.S. § 49-961(5) (defining “person” in environmental statutory scheme to mean “an individual, the United States, this state or a public or private corporation, local government unit, public agency, partnership, association, firm, trust or estate or any other legal entity”). The fact that the legislature assigned the state or the attorney general particular enforcement responsibilities or a right to intervene in private actions, e.g., AR.S. § 46-455(E), (J), (M), (N), also does not logically imply that the state cannot be civilly liable as a legal entity.
¶ 36 APSA provides for various remedies, some of which admittedly may not apply to the state. See A.R.S. § 46^455(H)(3) (providing for “dissolution or reorganization” of an enterprise in appropriate eases). But the fact that a particular defendant, whether the state or otherwise, may not be subject to every remedy does not suggest the defendant cannot be sued for damages. Cf. United States v. Turkette, 452 U.S. 576, 585, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (declining to limit scope of “enterprise” in federal RICO statute based on potential unavailability of civil remedies as to certain entities). After all, a group of persons that is not a legal entity could not be dissolved or reorganized, but APSA subjects such a group to civil damage liability. APSA affords a menu of civil remedies allowing courts to tailor relief appropriate to the particular case.
¶ 37 The majority concludes by noting that the legislature could expressly subject the state to liability under APSA Op. ¶ 18. Neither APSA nor Arizona law requires the legislature to specifically declare its intent to impose liability on governmental entities. Instead, Arizona governmental liability is the rule and not the exception, reflecting our state’s “overarching policy of holding a public entity responsible for its conduct.” Backus v. State, 220 Ariz. 101, 104, ¶ 9, 203 P.3d 499, 502 (2009). In Backus, we declined to impose restrictions on state liability under A.R.S. § 12-820.01(A) greater than those compelled by the statutory language. Id. at 107, ¶ 23, 203 P.3d at 505. We observed that if the legislature had intended to impose such restrictions, it would have said so. A similar observation applies here: if the legislature had intended to exclude the state from the legal entities potentially liable under APSA, it could have said so.
¶ 38 This Court has recognized that APSA should be broadly construed in light of the legislature’s remedial purpose of providing civil remedies to protect vulnerable adults. See In re Estate of Winn, 214 Ariz. 149, 150 ¶ 5, 150 P.3d 236, 237 (2007). Absent a clear indication that the legislature intended to shield the state from liability, we should hold that the state can be liable, because that interpretation comports with the statutory language, APSA’s purpose, and our case law recognizing that the state is a legal entity.
*332 ¶ 39 Because I also agree with the court of appeals regarding the other issues presented, I would affirm that court’s opinion reversing the summary judgment for the State and remanding to the trial court for further proceedings.
CONCURRING: ANDREW D. HURWITZ, Vice Chief Justice.